May it please the Court, Counsel. I want to thank you all for letting us be here today. I am here on behalf of a young lady we call Jane Doe, who is here to tell her story about how she basically became a sex slave of a teacher and a coach at the City View Independent School District. Forgive me as I go forward, it's a very fact-specific case, so some of it I'm going to read through, so I ask you to forgive me in advance for doing that, but the facts are important because we'll see that they align with case law that talks about what are exceptional circumstances to be able to use equitable tolling. And as we go through her story, a sad story, we want to be mindful of various other themes and legal issues that occur in a case like this. One, of course, is that it's a 12 v. 6 motion to dismiss. All we have to do is provide enough story, enough facts, and inferences from those facts to have a plausible claim. Intermixed in there is the issue of an abuse of discretion when a district court judge deals with issues of tolling. So we want to be mindful of that kind of concern as well. The underpinnings of this case is sexual assault at school, so it's a Title IX case, so here also we want to be mindful of what we call the totality of the circumstances, and the important part of that is not to disaggregate facts and or claims, which we believe the district court did do. The other thing that's important about Title IX, as we all know, and the Supreme Court has spoken about this in a number of cases, is that it's a remedial statute. It's intended to have a broad scope to protect people, particularly children, in educational institutions from the very, very horrors that we see here today. I want to use the term exceptional circumstances that is replete through the case law in terms of using issues of equitable tolling, and for a moment I'm going to ask you to maybe consider a different term. Horrible things. How many horrible things have to happen to one person before we get exceptional circumstances? I think you'll see by the time we get through this case and by the time I talk through the various facts of this case and link them to the hints or the elements that occur in the case law, you'll agree with me that we've met that burden. Can you? Okay. So do you agree that the Texas two-year statute of limitations applies? Yes. Do you agree that the equitable tolling standard of Texas applies, or do you believe there is some other equitable tolling standard that applies? And if so, what is the legal basis for it? I think . . . I think you're jumping to something I was going to talk about later, so I'm going to do it now. Well, this is . . . What am I relying upon? Am I correct, Your Honor? Right. What legal standard are you relying upon to put this in context? Because you keep talking about exceptional circumstances. I don't think that's a legal standard. So what is the legal standard, and what case does it come from, or what statute? Exactly. So as a general rule, there's a number of cases, and I'll go through them, and they give us what I call hints. In other words, there's no one case that we have that fits this horrific group of facts. But there's a number of cases that touch on a number of things. So we know in the cases that were cited by my counsel and myself that for my client to be able to rely upon the court to use its equity, or the district court to use its sense of equity, and now this court, you want to have clean hands, right? Obviously the case law, you don't want to be a prisoner. You don't want to previously have a criminal record or have a murder on your hands or go into court with an attorney. Those kind of cases, and many of the cases that are cited by my colleague in relation to equitable tolling or any kind of tolling theory, obviously my client's not that kind of a person. She has clean hands. There's a case called T.S. v. Burke Foundation. I'm not cited it, so I'm going to bring it forward today. It's 2023, U.S. District, Lexis, 75929. And there it gives us a number of other hints about what kind of things we should consider as we look at a case like this. So there, one of the hints is, was the individual a victim of abuse in the past? Well, here we know that our client was a victim of abuse in the past. She was taken from her parents and put into foster care for a while because of that abuse. The next thing that's mentioned in T.S. v. Burke Foundation was a person, another hint, so to speak, was a person placed in foster care. Well, she was too. Another hint in that same case, is there a lack of strong family relationships? Well, obviously here she has very, very weak family relationships. And once again in that case, another hint, is there any family support? Here she has no family support. She never told anybody about what happened to her. Another hint in this case, does she have a history of severe mental health issues? Well, she sure does. In fact, she has a history of suicide. In Rodriguez-Escada v. MHR Austin Sonic Restaurants, 2024, U.S. District, Lexus, 71077, well, once again, was she abused as a minor? Yes. Also in that case, an important issue that they found for continuous violation type theory and equitable tolling was the individuals who were part and parcel of the story given notice of their procedural rights. Well, here a very, very important part of this case is under Title IX, the school district staff, the superintendent, the principal, the vice principal, when they get notice of a complaint like this from a child or anybody, they have a duty to tell the parent. They have a duty to tell the parent and the family a number of procedural safeguards and a number of substantive safeguards to let them know what they can do. I'm talking about a civil lawsuit. I'm just talking about the kind of things they can get at school to help the kid heal and benefit from it. Well, in that case, they found that very important that the children in that case never got notice of their procedural rights, nor did their parents. In Roe v. Sullivan, 967, F. 3rd, 186, it's a Fifth Circuit case. One of the issues that, another hint, was that the student had a lack of, the person had a lack of sophistication. And that's echoed again, once again, in T.S. v. Burke, a failure to understand procedures. Was the person misled? Was the person threatened? Was the person pressured against asserting rights? Were they take advantage of a lack of sophistication? And, you know, one of the things I looked at as I studied for this that I found really troubling is that the only thing that comes close to this are the cases that deal with people who are sex slaves. And there, they have a 10-year statute of limitations. So, so, so. Right, but they, you have the two-year statute because Title IX adopts the racist personal injury statute. That's correct, Your Honor. But I do want to point out the issue of the statute of limitation because we're also, at least I'm not looking at it strictly, I'm looking at it as a, as a point in the, in time, but we're also here to say because of various tolling theories and equitable tolling issues, that's just another thing to consider. It's not an end point unto itself. What case would let us do what you want us to do? I don't think there is one. I'm not sure there is one because I looked high, high, high and low, far and near, and there's nothing as bad as this. I get that this is a horrible situation that you have outlined, but what, what, we have a court of limited power. We're not roving correctors of justice. And so we have to follow the law. So what, how in the world could we extend it to, to be? Because I think we would have to extend it, you know, it's just a couple months, but it's a couple months beyond the limitations. I've got a timeline. Well, a couple of ways, you know, I would do it if I had a magic wand and I was able to do it. I think we, we, uh, the letter that, uh, Superintendent Bushong sent her in 2022 extended the statute of limitations to a continuous violation theory. Now, one of the rubs in the case, which kind of jumps into the issue about whether or not we should be permitted to amend, which, which I think we should be, but, um, we did not plead a separate title nine retaliation case, but the Sewell versus Monroe school district case talks about hostile education. That's a fifth circuit case. And, and that talks about how for title nine purposes, retaliation and hostile educational environment are the same. So I believe within the pleadings, within the pleadings themselves, there's sufficient notice to the superintendent that there's a hostile educational environment from this child and the retaliatory measure by Bushong in 2022 sustained that hostility. Was he still the superintendent? Yes. To 2022 when he sent this letter? Yes, Your Honor. So that would be one area that I would do it. So is your client asserting a title nine retaliation claim on appeal? Well, the, on, on who? Is your client asserting a title nine retaliation claim on appeal? No, it's not specifically in there, but I'd subsume by the case law. Well, where in the complaint, the live complaint, I think it was the second amendment complaint, was it either mentioned or implied? In other words, if you, if you're contending that the other side had fair notice that this was a claim, where in your complaint was it? Can you give me a page site? Absolutely, Your Honor. We, we, we pled it at the time as a first amendment retaliation claim. First amendment. Yes. But I'm talking about a title nine because your first amendment was a 1983 retaliation claim, right? It was, it was the first. Yes, that's correct. Okay. I'm talking, I'm talking about title nine. Are you asserting a retaliation claim under title nine? We are, we have provided enough notice to the defendant that there was a hostile educational environment and that's subsumed by otherwise called a retaliation claim. But specifically, we did not file a retaliation claim for under title nine because I didn't think we had to. Okay. Where in your complaint is this hostile environment claim that you said, that you're telling us subsumes your retaliation claim? Can you give me a site in the complaint where it is? At the moment, I'll be able to do that very specifically when I come back on a recall, but I can tell you this, it's inferred throughout the entire complaint. I don't think any, any fair read of the complaint, uh, uh, clearly this young lady lived in a hostile educational environment for three years. Can you point me to where in the complaint you plead the elements of a retaliation claim under title nine? I'll have to catch that back on recall, Your Honor, if that's what I can. Okay. I'm going to remind you of that. Thank you. Are you trying to amend your, did you ask the court to amend in the district court already or not? And do you believe that you could plead a timely retaliation claim? You know, that's always a tough call, Your Honor, after you've lost, right? You know, so with, with, with. Was the answer no, you didn't ask? Well, we asked, we asked to amend. We asked to amend in the. To plead a timely title nine retaliation claim. Let me be specific. We put in our response to the school district's motion to dismiss a desire to amend both in the body of it, in the section we call standard of review, and we also put it into the prayer and relief section. So yes, it's in the pleadings. For purposes of a title nine retaliation claim, do you have to show an adverse action? That's a very, very good question. And in employment sessions, you have to. Right. But I think the issue is even, my first answer is I don't know, but even if the answer is yes, she, there was an adverse action. Is that adverse action the letter that she received threatening, in other words, she had already graduated. What adverse action has she pled? Well, that kind of goes to the whole continuous aspect of it. So while she was a student, she was threatened by Morris that if she said anything, he would feral her. When she spoke to the superintendent and the vice principal, they threatened her with expulsion and or being blackballed for going to college and or intimated that her aunt who worked there could lose her job. Let me rephrase my question. What adverse action occurred within the statute of limitations period? The adverse action was that she didn't have the freedom to speak about what happened to her. Her advocacy was chilled. And was it chilled after she had graduated? Absolutely. Because it's a small, one of the things that I guess we would ask you to take judicial notice of if you looked at the school district's website, it only has like about 1,200 students. This is a small school. It has two schools, an elementary school and a middle school and a high school. So everybody knew this kid. When she had a suicide attempt, everyone knew, right? You know, we kind of have to ask the question, why Morris went after her to begin with? What did he see in her? He was a predator, right? All these things about this child, he had a horrible sense of smell for lack of a better term when he went after this kid and he abused her for three years. And her fear continued. What's important, I think relevant factually, and I think cases, I always say, you know, the most important part of cases are the inferences, right? That we don't talk about. But when she graduated, she was happy to get away from this guy. And he won an award. I want you to think about it from her perspective. He had abused her for years and treated her, frankly, like a sex slave, like a toy. And then this guy gets an award. She still doesn't say anything. She doesn't say anything. She's too scared. You need to wrap it up. Okay. Oh, I'm sorry, Your Honor. Well, I'll have it a few minutes later. Thank you so, so much. And I'll look for the site in the complaint a little bit more specifically. Thank you. May it please the court. Katie Payne on behalf of CityView ISD, the remaining appellee in this case. What was going on in the school district? Chief Judge Alrod, the alleged facts of this case are horrific. My entire argument takes those alleged facts as true. And I would assert Numerous people were being abused by this coach. And the superintendent was hiding it and pressuring people? Your Honor, I can't dispute the facts at this procedural posture. But what I can submit to you is that Is that, I mean, there's a whole series of people, of other girls who come out. Is that true? Your Honor, I can't dispute the truth. I mean, that's Those are the facts alleged in the case. I mean, this one young lady, it's a terrible story.  But all of these other people, too, and that it was a big conspiracy Amongst the coach and the superintendent and a principal And the person who's the counselor kept mum and didn't do any of the reporting They were supposed to do for years? Your Honor, at this procedural posture, I can't challenge the facts alleged. You do this kind of work, don't you? I'm sorry? You do this kind of work. Yes, Your Honor. I mean, this is a pretty egregious factual complaint in this kind of work, isn't it? Yes, Your Honor. The alleged facts are horrific. I would submit to you all that taking those horrific alleged facts is true. The district court did not err when it dismissed this case. It did not abuse its discretion in declining to apply the equitable tolling theories. And it did not abuse its discretion in declining to allow her to amend her complaint for the third time. I will start with... Amended to file a retaliation claim? Your Honor, since Judge Ramirez asked, if we look at the second amended complaint, The Title IX claim exists in the record at pages 354 to 355. There is no Title IX retaliation claim there. I'm asking, would it be futile to have allowed a Title IX retaliation claim, or would it not be futile? Your Honor, I believe it would be futile because it would still be untimely.  Yes, Your Honor. With the Busong letter. How do you say his name? I've been saying Busong, but we can say... How would that be untimely? Yes, Your Honor. That letter that occurred in July of 2022 is a discrete retaliatory act. It's the only act that took place within the prescriptive period. Even under the, I think, plaintiff's best theory of tolling, the continuous violation theory, it has been blackletter law since the Morgan case was decided by the Supreme Court in 2002, that the continuous violation theory applies to a hostile environment, but it does not apply to retaliation claims, and it does not apply to straight discrimination claims. And that makes sense when we think about the purpose of the continuing violation theory. It exists in a circumstance where maybe the first 15 acts wouldn't support a claim, but over time, they accumulate, and you have a claim. The law recognizes that retaliation is different. It consists of discrete acts. The only act, and I think it's important to note, the only retaliatory act that took place, she was no longer a student. Title IX requires that you either be in the educational program that's receiving that federal funding or be trying to access it. There's no allegation here that that was happening. She graduated in May of 2020, and this discrete retaliatory act took place in July of 2022. So I do think that any Title IX claim that would be asserted at this time would be futile. Are you conceding that sending a letter threatening litigation is a retaliatory act? No, Your Honor. For the reasons asserted in my brief, and I think it goes to the Wilson case that was fairly recently decided by this court, she was engaging in speech in the press that Mr. Bassong didn't like and didn't agree with. He found it defamatory. So he sent her a cease and desist letter that said, stop defaming me or I'm going to file a lawsuit. I don't believe that she is allowed to weaponize his speech in that manner. She gets to say the speech that she wants to say, and he gets to say the speech that he wants to say, and that is not retaliation. I was trying to think of something that maybe he could have done in July of 2022 that could be considered cognizable retaliation when she's no longer a student. And there might be something like if she had requested a transcript and he directed the office, don't submit her transcript to a college or something. But I don't think his engagement in pure speech, especially speech that he is entitled to do, he's entitled to file a defamation lawsuit if he thinks that the facts support it. Your Honor, again, I do think that their best theory of tolling here is probably the continuous violation theory. I think there's maybe somewhat of an open question as to whether that continuing violation theory even applies to Title IX claims. It was born and grew in the Title VII context. The Sewell case that Ms. Della relies on does apply it to a Title IX hostile environment claim without much discussion. But I don't think that this Court has to reach that ultimate question of do we want to extend this from Title VII to Title IX, which is spending clause litigation and has its own set of important circumstances because the continuous violation theory just doesn't apply here. You would need, even under the facts of the Sewell case, they found that it applied to his hostile environment claim. He also had discrimination and retaliation claims. It only applied to his hostile environment claim. And the facts of that case were he was being sort of consistently verbally, racially harassed and that racial harassment was ongoing and there was at least one act of racial harassment that occurred within the prescriptive period. In this case, we don't have that. She graduated from school in May of 2020. The Second Amendment complaint says that she moved on at that point. And then the only action that occurred during the prescriptive period was that 2022 letter from Mr. Boussaint. Yes, Your Honor. Was there any evidence in the complaint that Coach Morris had still, after 2020, was still assaulting her? No, Your Honor, although I think it, I'm not sure if it's in the complaint, but it definitely is in her brief that she was afraid that that might happen. A couple of considerations there. She had turned 18 and had graduated. But if it's a predator abusing you and you're a victim of that.  If it was a non-consensual sexual act that had occurred. It is automatically because she's underage when it started. If we're talking about after she had graduated and turned 18, then if he had, if Morris had taken some sort of additional sexual abuse tactic towards her during that time, I think that would be a different situation. But there's nothing that alleges that. I mean, it pretty clearly says she graduated in May of 2020. These are the words from the complaint, not my words. She, at that point, attempted to forgive herself and move on. There's only, I think, a stray allegation that she had some sort of fear that it might happen again. Your Honor, I think we should talk about the issue of amendment. It's our position that it wasn't adequately raised. There's a stray reference to it in their response to our motion to dismiss and in their prayer. I think the case law is pretty clear that you actually have to raise it. You actually have to show or make some sort of showing as to what type of amendment you would make to show that it would not be futile at this point. We're dealing with a second amended complaint. I think I counted, and before the time we got to the second amended complaint, I think there were at least six motions to dismiss that had been filed by the various defendants, including two by the school district. So she was on notice of our position as to the insufficiencies with her complaint. After the court dismissed this case with prejudice, she could have filed a motion for reconsideration and said, you should let me amend, and here's why. None of that happened. Even in her opening brief on appeal, in the argument about amendment, she submits additional facts that she could have alleged against Mr. Busong on the First Amendment claim, but nothing as far as the school district or the Title IX claim. I think, Your Honor, Chief Judge Ildred, you pointed out what I saw as I was reading this briefing. It seems that the appellant is asking for this court to create sort of an additional theory of equitable tolling for exceptional circumstances or egregious facts, and I think that's problematic because the statute of limitations and the tolling principles are taken from state law, Texas law. In the trial court, the appellant asserted two theories of equitable tolling that are cognizable under Texas law, the discovery rule and fraudulent concealment. The district judge engaged with both of those tolling theories and found that they did not apply to the facts of this case. A similar case on that point is the King-White v. Umbel ISD case that's cited throughout our brief. The discovery rule requires a situation in which the injury is inherently undiscoverable. This is not the discovery rule case. I'll move on. Yes, Your Honor. It's not concealed in that way. It's whether or not it should be tolled or extended because of the trauma of a minor with all the authority figures coming against her in unlawful ways, allegedly. That's what this tolling is based on. I would submit to you then the two recognized tolling theories under Texas law do not apply here if it's not discovery rule and it's not fraudulent concealment. Then we're left with sort of this. Continuing whether or not it's because through the misconduct of others, there's that theory that the misconduct of others keeps you from going forward. Arguably, that letter is a misconduct of others that kept her from going forward. Your Honor, to me, she has what in her best case is a discrete retaliatory act. That discrete retaliatory act under the continuing violation theory could not revive a retaliation claim because the continuing violation theory is not applicable to retaliation claims. She's asking you to do something that I think is even further attenuated. She's asking you to take a discrete retaliatory act and apply it to revive a hostile environment claim. I would submit to you all that that's not what the continuing violation theory covers. You know, I think that the Texas statute maybe was for the sexual assault and the minors was 10 years maybe and now it's maybe 20. It's been extended since this case even. Yes. You know, one could look at this and say this two year with minors in Title IX in sexual assault is woefully inadequate. But, you know, especially when even the state itself has recognized that the statute has to be much longer to come forward on these sexual assault claims. Your Honor, I think in order to reach that conclusion, this court would have to overrule the King-White case. We can't do that. Go ahead. In King-White, this court fully engaged with the question of which Texas statute of limitations should be applicable. I think the plaintiff at that point put forth the statute of limitations that was applicable under Texas law to sexual assault claims which may have been five years at that time. It was certainly longer than two years and the court determined that it did not apply. It's now been extended several times because they're realizing that the outcry takes so long for people through the trauma of this. Yes. Your Honor, and the fact that there was a sexual assault specific law on the books at the time that the King-White case, the court engaged with that, the fact that that statute, that the number of years has been extended, I don't think changes the outcome and that the King-White case still applies here. Has any court applied any conspiracy type theory to conceal Title IX violations? Because that's what this is actually. It's an alleged conspiracy to conceal Title IX, that all these people who are the proper reporters and decision makers are all in this together to keep their mouths shut and to allegedly intimidate people who might come forward. Your Honor, that sounds to me like fraudulent concealment. And in this case, there was no fraudulent concealment. The appellant is the person, unfortunately, who is most intimately aware of the facts supporting this claim. She knew of the sexual abuse. She knew that he was an employee of the school district. Taking the alleged facts as true, she knew exactly who to report it to. She went to the principal. Well, she did report it. The superintendent. They hunkered down, allegedly, and did not do any of the things they were supposed to do by giving her counseling and support and removing him from her proximity and the hundred things that you would need to do in a case like this. Your Honor, I would submit to you that they went further than that. It's not that they heard her out and said, we'll take this under advisement. According to the alleged facts, they immediately responded to her, stop talking. Don't say anything about this. Yes. Shut her down. So Your Honor, at that point, she was aware even of the final elements of the Title IX claim, which is deliberate indifference. The alleged facts indicate that they were clear with her. We have no intention of taking this seriously or stopping this. So there is no fraudulent concealment. The person in this case who has the best knowledge of the facts supporting her claim is the appellant. It was a minor child. Up until she turned 18, and then there were two years for the statute of limitations. In light of the horrific facts of this case, the next thing that I have to say sounds very cold-blooded, but it doesn't make it not true, which they raised a public policy argument in their reply brief. Statutes of limitations are also an important part of public policy, and I would submit to you all that in the Title IX context, where it's spending clause legislation and a judicially created private right of action, and that the Supreme Court has both consistently and recently emphasized that this claim is to be considered a contract between the federal government and the federal funding recipients, and that both the elements of the claim and its damages must be foreseeable, I would submit to you all that a statute of limitations is an important component of that foreseeability. Well, you know, Title IX had probably the greatest bite in the changing of women's rights in terms of athletics. It changed the world. I won't go into detail of that, but Title IX has had profound consequences in terms of moving huge amounts of money in major universities across the country in terms of just women's rights. So to me, to my mind, it's one of the most signaled acts of the Congress in terms of women's rights. You know, when I look here at this corruption, it really is a... stunning that... to see the more narrow reading that it is. Your Honor, I can't dispute any of that. It's an important piece of legislation. As a recipient, I would not dispute that. Your Honor, it sort of led me into something that was raised in the reply brief, and this is my only chance to address it, which is that they put forth that even if we're correct and that they hadn't pleaded any cognizable damages and that pursuant to the Cummings case, this should be dismissed because there's only emotional harm alleged, they submit that they can go forward on equitable relief. If you look at the second amended complaint, there's two pages that outline the damages and relief sought. I think more than ten types of damages. There is no request for equitable relief. The case that they rely on that she could pursue equitable relief is Beasley, and it's from the Middle District of Alabama, and I think it's an apposite. In that case, she was in the program or would have benefited from the program at the time she filed suit, but by the time the issue was brought to the court, she was no longer part of the program. And it was imperative to the court's ruling that she could have benefited from the injunctive relief at the time she filed suit, and also she was seeking to represent class members who could currently benefit. That's not the case here. By the time she filed suit, she had been graduated for over two years, and there's no allegation that she was in any other method trying to access that educational program. And that brings me to something I almost forgot, which is I think, Chief Judge Elrod, you mentioned that this would maybe be a couple months of the extension of the statute of limitations. It's almost a year. She graduated in May of 22. The allegations are that the sexual abuse stopped then. She did not file suit, and of course she turned 20 in February of 2020. So I think the latest that we could have possibly had a sexual abuse allegation is in May of 2022, and then she didn't file suit until April of 2023. So they're seeking for almost an additional year extension to the statute of limitations. If you all... Is this the only case? Are there other pending cases in this? This is the only case that I'm aware of. And your co-defendant is no longer in this case? Yes, Your Honor, as of yesterday afternoon. Thank you. If you all have no further questions, thank you for your time and the opportunity to be here this morning. The school district asks that you affirm. A couple things I'd like to obviously point out. One, to answer your question, just briefly on the reporter's records, page 335, 343, 344, and 335, there's discussions of the term harassment. And certainly that's subsumed into the story, though it's not specifically pled as a Title IX retaliation claim. But there's significant use of the term harassment throughout the complaint and the briefing. And once again, Sewell v. Monroe City School District basically subsumes hostile educational orient and retaliation of being equal. The thing I want to kind of get back to... Before you move on, if you don't mind, thank you for pointing out where those references are to the harassment. Can you also point out to me where you pled the elements of a retaliation claim? Yes, we did that. That was within the First Amendment component as to Superintendent Bushong. And there we pled that, you know, she was... When she finally did, she was advocating free speech. It was an issue certainly of public importance. And she was chilled once again. As soon as she got that letter, there's nothing in the record that she spoke to the police or anybody about it again, or the press in particular. So as far as we're concerned, the facts show that she was chilled, her advocacy was chilled. And of course we do know, both factually and inferentially, that because of her mental illness, it certainly worsened. I wanted to go back to the first question you asked me, actually. So if we look at Judge O'Connor's... ..memorandum opinion... ..there's one theme in... ..the decision that comes up over and over in each section. So when he talks about why the discovery rule doesn't apply, it's because... ..it's based upon a person, a reasonable person exercising reasonable diligence. OK? Hold that thought for a minute. And then when he talks about fraudulent concealment, he talks about the estoppel effect, etc, etc, would cause a reasonably prudent person. OK? And then when we talk further throughout this, there's always the standard of the reasonably prudent person. Now, I'm old, parent, grandparent, I coach, I've been around lots of kids, I do school law. I know the difference between an intact 18-year-old and an 18-year-old that's not. This child at 18 was not a reasonably prudent person for the purposes of these claims to toll limitations. And that... What can we do with that? Come again, Your Honour? What can we do with that? What case says that we can say, well, she has a disability such... ..because of both her foster care life and traumatic child-rearing and also the trauma and PTSD or whatever of this event, what case says that we can take that into account for the limitations? Well, all the cases that I talked about earlier, that I cited, talk about those, what I call hints in the case law that gives weight to certain types of fact patterns that would lend oneself to provide an equitable relief. Because that's what we're talking about here, it's an equitable relief, right? It's a judgment call. So that, once again, we're adding up all these things that happened to this young lady and we're taking a picture of her and we're saying, OK, is she a reasonably prudent 18-year-old? And the answer is, I think we all agree, no. So if the answer to that is no, then the judge erred when applying this standard to her incorrectly. That's my response, Your Honour. I mean, obviously, predators prey on people that are vulnerable and that's how they pick people that are from, you know, these homes that are not intact, where they don't have a support network and they try to isolate them. We know all this. But we are not Congress or the state legislature of Texas. What gives us the power to do what you want us to do? Well, I think my legal response is that the judge erred, that the judge abused his discretion, that we have a 12b-6 motion that has plausible claims of the facts going through what we've gone through ad infinitum, and we also have plausible claims of the various tolling theories and that the judge used the wrong standard. I'm going to change my word. He applied the standard of a reasonable person or a reasonable 18-year-old incorrectly based upon these facts, and I think that's something you definitely can opine on and fairness should. Thank you. We have your argument. Thank you so, so much for letting us be here today. We really appreciate it. Thank you. We have both arguments. We appreciate them, and this case is submitted. This court will stand in recess until 9 a.m. tomorrow. Thank you.